UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MICHAEL D. HOLLIDAY,

    Plaintiff,

v.                                    CASE NO. 6:17-cv-1562-Orl-MCR

ACTING COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION,

    Defendant.
_____/

## MEMORANDUM OPINION AND ORDER[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying his application for a period of disability and disability insurance benefits. Plaintiff alleged he became disabled on May 29, 2007. Plaintiff's application was denied initially and on reconsideration. A hearing was held before an Administrative Law Judge ("ALJ") on March 29, 2012. (Tr. 117-38.) The ALJ entered a favorable decision for Plaintiff with an amended alleged onset date of March 23, 2010. (Tr. 176-81.) Plaintiff requested review of that decision. The Appeals Council vacated the decision and remanded the case for further proceedings.[2] (Tr. 16, 183-86.) On remand, another ALJ held an administrative

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 11.)

[2] The Appeals Council vacated the decision and remanded for further proceedings because, *inter alia*, Plaintiff declined to amend the alleged onset date and the record did not contain any other communications regarding amending the onset date. (Tr. 183-86.)

hearing on March 13, 2015, at which Plaintiff was represented by an attorney.[3] (Tr. 41-110.) At the hearing, Plaintiff orally amended his alleged onset date to September 30, 2008. (Tr. 47.) The ALJ rendered a new decision concluding that Plaintiff was not disabled from the amended alleged onset date through September 30, 2011, the date last insured. (Tr. 16-31.)

Plaintiff is appealing the Commissioner's decision that he was not disabled during the relevant time period. Plaintiff has exhausted his available administrative remedies and the case is properly before the Court. The undersigned has reviewed the record, the briefs, and the applicable law. For the reasons stated herein, the undersigned determines that the Commissioner's decision is **AFFIRMED**.

I.   **Standard of Review**

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841

---

[3] The ALJ held a Virtual Teleconference hearing with Plaintiff appearing in Melbourne, Florida, and the ALJ presiding over the hearing in Fort Lauderdale, Florida. (Tr. 17.) Due to technical difficulties, the ALJ was unable to properly conference all parties. The ALJ was only able to call one medical expert at a time to testify. (*Id.*) The ALJ could not take Plaintiff's testimony prior to the medical experts' testimony; therefore, Plaintiff testified after the medical experts. (*Id.*) After the hearing, the ALJ sent a CD recording of Plaintiff's testimony and additional interrogatories to the medical experts for their review and updated opinions. (*Id.*) The ALJ also provided vocational interrogatories to the vocational expert. (*Id.*) Plaintiff's counsel was provided with the interrogatory responses and was permitted to submit any additional interrogatories he wished to pose to the medical and vocational experts. (*Id.*) Plaintiff's counsel did not submit additional interrogatories or request a new hearing. (*Id.*) Plaintiff does not challenge the procedure described above on appeal.

2

F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

## II. Discussion

Plaintiff argues two general points on appeal. First, Plaintiff argues that the ALJ failed to properly weigh the medical opinion evidence, including opinions of treating physicians Ralph Vicari, M.D. and Bruce Thomas, M.D. Specifically, Plaintiff contends that the ALJ failed to articulate good cause for according "little weight" to both Dr. Vicari and Dr. Thomas's opinions. Second, Plaintiff contends

3

that the ALJ erred by devising a residual functional capacity ("RFC") determination without accounting for Plaintiff's manipulative limitation. Defendant responds that the ALJ's evaluation of the medical opinions of record is clearly articulated and supported by substantial evidence. Defendant also argues that the ALJ properly evaluated Plaintiff's RFC.

## A. Standard for Evaluating Opinion Evidence

The ALJ is required to consider all the evidence in the record when making a disability determination. *See* 20 C.F.R. § 404.1520(a)(3). With regard to medical opinion evidence, "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). Substantial weight must be given to a treating physician's opinion unless there is good cause to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

"'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on: (1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, (3) the medical evidence supporting the

4

opinion, (4) consistency of the medical opinion with the record as a whole, (5) specialization in the medical issues at issue, and (6) any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(2)-(6).

Although a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion, *see Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984) (per curiam); 20 C.F.R. § 404.1527(c)(2), "[t]he opinions of state agency physicians" can outweigh the contrary opinion of a treating physician if "that opinion has been properly discounted," *Cooper v. Astrue*, No. 8:06-cv-1863-T-27TGW, 2008 WL 649244, at *3 (M.D. Fla. Mar. 10, 2008). Further, "the ALJ may reject any medical opinion if the evidence supports a contrary finding." *Wainwright v. Comm'r of Soc. Sec. Admin.*, No. 06-15638, 2007 WL 708971, at *2 (11th Cir. Mar. 9, 2007) (per curiam); *see also Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (same).

"The ALJ is required to consider the opinions of non-examining state agency medical and psychological consultants because they 'are highly qualified physicians and psychologists, who are also experts in Social Security disability evaluation.'" *Milner v. Barnhart*, 275 F. App'x 947, 948 (11th Cir. May 2, 2008) (per curiam). *See also* SSR 96-6p (stating that the ALJ must treat the findings of State agency medical consultants as expert opinion evidence of non-examining sources). While the ALJ is not bound by the findings of non-examining

5

physicians, the ALJ may not ignore these opinions and must explain the weight given to them in his decision.  SSR 96-6p.

### B. The ALJ's Decision

The ALJ determined that Plaintiff had severe impairments, including "atrial fibrillation; cardiac arrhythmia status post electrophysiology studies and ablations with Wolf-Parkinson-White Syndrome; lumbar osteoarthritis; degenerative disc disease of the cervical spine; and carpal tunnel syndrome (CTS)." (Tr. 20.) The ALJ then determined at step three that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (Tr. 23.)

The ALJ then made the following RFC determination:

> [Plaintiff] had the [RFC] to perform light work, as defined in 20 CFR 404.1567(b), except as follows: lift and carry up to 10 pounds occasionally and frequently, sit for 6 hours at a time for a total of 6 hours in an 8-hour workday; stand for 2 hours at a time for a total of 6 hours in an 8-hour workday; walk for 2 hours at a time for a total of 6 hours in an 8-hour workday; continuously use hands for operation of reaching overhead and in all other directions; continuously use hands for handling, fingering, feeling, and push[ing]/pulling; continuously use feet for operation of foot controls; never climb ladders or scaffolds; continuously climb ramps and stairs; occasionally perform balancing, stooping, kneeling, crouching, and crawling; no exposure to unprotected heights; and can tolerate continuous exposure to moving mechanical parts, operating a motor vehicle, humidity, wetness, extreme cold, extreme heat, vibrations, and dust, odors, fumes, and pulmonary irritants.

 (Tr. 23.)

In making his finding, the ALJ evaluated the medical opinion evidence and accorded "little weight" to the opinions of Dr. Vicari who opined in a March 20, 2011 medical source statement that Plaintiff had NYHC II Atrial Fibrillation with shortness of breath, weakness, palpitations, and "severe fatigue." (Tr. 2295-99, 2306-20.) Further, Dr. Vicari opined that Plaintiff was, *inter alia*, able to sit for six hours in an 8-hour workday and stand and/or walk for less than two hours in an 8-hour workday, occasionally stoop, crouch, and climb stairs, and could be expected to be absent from work as a result of his impairments or treatment in excess of four days per month. (Tr. 2297-99, 2307-10.) When evaluating the opinion evidence, the ALJ discredited:

> Dr. Vicari's assessment at Exhibit 25F and 27F because it is inconsistent with the contemporaneous cardiology treatment records which reflect followup every 6 months and stabilization following treatment in 2007. In fact, Dr. Vicari described [Plaintiff's] condition as "atrial fibrillation clinically resolved." Furthermore, Dr. Vicari's opinion regarding [Plaintiff's] mental status and "stress" falls outside of his medical expertise . . . Also notable, following his completion of the medical source statement, in a followup visit with [Plaintiff] on July 14, 2011, Dr. Vicari reported "It is amazing, but [Plaintiff] has had absolutely no recurrence of atrial fibrillation symptomatically" since he underwent pulmonary vein isolation surgery 4 years ago. The doctor noted that [Plaintiff's] cardiac rhythm was "regular." He had no evidence of any murmur or peripheral edema. [Plaintiff] requested to followup in another 6 months.

(Tr. 27 (internal citations omitted).)

The ALJ also accorded "little weight" to the opinions of Dr. Thomas, Plaintiff's primary care physician, who opined in a cardiac questionnaire that

7

Plaintiff's cardiac conditions would cause limitations in walking, carrying, maintaining a normal pace, and sustaining physical activity. (Tr. 2233.) The ALJ reasoned that the opinion was "not well supported by the treatment notes of record and [wa]s inconsistent with the evidence of record as a whole[.]" (Tr. 29.) The ALJ further explained that the limitations proffered by Dr. Thomas were not quantified, Plaintiff's most recent cardiac event and stress test dated back to 2007, and Dr. Thomas's treatment notes indicate that Plaintiff's cardiac condition was under control and asymptomatic since 2007. (*Id.*)

Dr. Thomas also opined in a separate orthopedic questionnaire that Plaintiff had, *inter alia*, degenerative disc disease of the lumbar spine, synovial cyst, facet arthritis with bilateral lower extremity neuropathy, limited range of motion of the lumbar spine, gait disturbance, chronic pain, and was incapable of performing fine and gross manipulations on a sustained basis due to cognitive dysfunction. (Tr. 2347-48.) The ALJ discredited those opinions as unsupported by the treatment notes of record and inconsistent with the evidence of record as a whole. (Tr. 29.) The ALJ more specifically explained:

> Dr. Thomas, who is not an orthopedist, had well documented that [Plaintiff's] medical conditions did not preclude [Plaintiff] from continuing an active lifestyle, regularly playing golf and engaging in very frequent, long-distance travel – including a planned month-long tour of Europe in late 2009. In addition, [Plaintiff] testified that his back pain had been the same for the last 12 to 15 years, and long prior to the alleged onset date.

(Tr. 29-30 (internal citations omitted).)

The ALJ accorded "great weight" to the independent medical expert opinions rendered by testifying physician Murray Gilman, M.D. because they were well supported and consistent with the evidence of record. (Tr. 25.) Likewise, the ALJ accorded "great weight" to the independent medical expert opinions rendered by psychiatrist Larry Benovitz, M.D. in determining that Plaintiff's mental impairments were nonsevere, due to his familiarity with the listings and program regulations, and because he had the opportunity to review all of the medical evidence that was available at the hearing level. (Tr. 23.) Finally, the ALJ accorded "some weight" to the opinion of the state agency reviewing physician. (Tr. 30.)

The ALJ ultimately held that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible to the degree alleged because the testimony of the [Plaintiff] . . . [is] inconsistent with the evidence of record." (*Id.*) The ALJ found that through the date last insured, Plaintiff was capable of performing his past relevant work as an attorney as generally performed. (Tr. 31.)

### C. The ALJ Properly Weighed the Medical Opinion Evidence

The ALJ articulated specific reasons for according "little weight" to Dr. Vicari's opinions and those reasons are supported by substantial evidence. The

9

ALJ first noted that Dr. Vicari's opinion in the medical source statement was inconsistent with Dr. Vicari's own medical records. (Tr. 27.) For example, the ALJ correctly noted that Dr. Vicari's March 20, 2011 medical source statement opined that claimant had "very symptomatic" NYHC II Atrial Fibrillation; however, the medical evidence of record indicates cardiac stabilization following treatment in 2007, and eventually clinical resolution of the condition. (Tr. 741 (Dr. Vicari opining in July 2008 that Plaintiff's atrial fibrillation had been cured since surgery), 739 (Dr. Vicari opining in 2009 that Plaintiff has had no recurring symptoms of atrial fibrillation since 2007), 2231-32 (Dr. Vicari opining on July 18, 2011 that Plaintiff has had absolutely no recurrence of atrial fibrillation symptomatically and that Plaintiff was cured).) In fact, only four months after Dr. Vicari submitted his medical source statement claiming Plaintiff was "very symptomatic," Dr. Vicari opined in a followup visit Plaintiff has had "absolutely no recurrence of atrial fibrillation symptomatically" for the past four years. (Tr. 2332.) Although Dr. Vicari opined that Plaintiff's reported weakness, fatigue, and intermittent palpitations in April 2010 were "clearly exacerbated by emotional stress which is part of his job as a trial lawyer," Plaintiff had not been working as a trial lawyer for almost two years at the time Dr. Vicari rendered the opinion. (Tr. 1156.)

Moreover, the ALJ appropriately noted that Dr. Vicari's opinion regarding claimant's mental status and "stress" falls within the field of psychiatry. (*See* Tr.

27; *see also* Tr. 68 (Dr. Gilman testifying at the administrative hearing that measuring the effect stress has on bringing about symptoms is within the province of a psychologist or psychiatrist).) In fact, SR 85-15 emphasizes that the effect of stress on individuals is "highly individualized." Thus, it was proper for the ALJ to determine that Dr. Vicari's opinion was outside the scope of his specialty. *See* 20 C.F.R. § 404.1527(c)(5) (stating that an ALJ may consider a physician's specialty in evaluating medical source opinions).

The Court agrees with the Commissioner that even if Dr. Vicari's opinion that Plaintiff cannot perform work as a trial attorney is correct, his opinion does not necessarily preclude Plaintiff from working as an attorney. With assistance from the vocational expert, the ALJ ultimately determined that Plaintiff could perform his past relevant work as an attorney as *generally* performed, not as actually performed. (Tr. 31.) Any error by the ALJ in evaluating Plaintiff's stress would thus be harmless. *See, e.g., Hunter v. Comm'r of Soc. Sec.*, 609 F. App'x 555, 558 (11th Cir. 2015) ("To the extent that the [ALJ] erred by failing to state with particularity the weight assigned to [the] medical opinions, the error is harmless because it did not affect the [ALJ]'s ultimate determination.").

The ALJ also articulated good cause for according "little weight" to Dr. Thomas's opinions and those reasons are supported by substantial evidence. As an initial matter, Dr. Thomas's cardiac questionnaire does not quantify the limitations identified by him, nor does he explain these limitations in vocational

11

terms despite the form asking for an explanation. (Tr. 2233-34.) While Dr. Thomas did opine that Plaintiff had severe limitations related to his cardiac condition, including limitations with walking, carrying, and the ability to sustain physical activities (Tr. 2233-34), Dr. Thomas's own treatment notes repeatedly indicate that Plaintiff had no cardiac event since 2007 and that the condition was under control. (Tr. 1986 (reporting controlled atrial fibrillation), 1995 (reporting no heart symptoms), 2000 (reporting good atrial fibrillation control).) Thus, Dr. Thomas's own treatment notes were inconsistent with his opined limitations.

Additionally, Dr. Thomas opined in an orthopedic questionnaire on May 28, 2010 that Plaintiff exhibited gait disturbance, chronic pain, reduced grip strength, fracture, limited range of motion in his lower back, and that Plaintiff was unable to perform fine or gross manipulations on a sustained basis. (Tr. 2348.) The ALJ noted that while Dr. Thomas documented Plaintiff's conditions, these conditions did not preclude Plaintiff from continuing an active lifestyle. (Tr. 29.) It is clear that Plaintiff continued to play golf, coach soccer, and engage in long-distance travel despite his limitations. (Tr. 740, 1194, 1988, 1996, 2001, 2016.) The ALJ properly considered Plaintiff's activities of daily living when evaluating Dr. Thomas's medical opinion. *See Magill v. Comm'r of Soc. Sec.*, 147 F. App'x 92, 95 (11th Cir. 2005) ("[A]n ALJ need not give a treating physician's opinion considerable weight if the [claimant's] own testimony regarding h[is] daily activities contradicts that opinion.").

Plaintiff argues that the ALJ erred in giving weight to Dr. Gilman, the independent medical expert who testified at the hearing.  Specifically, Plaintiff argues that Dr. Gilman opined that Plaintiff was limited to occasional fine finger manipulation and, as such, the ALJ should have included that limitation in the RFC determination.  However, Plaintiff's argument ignores the fact that Dr. Gilman revised his opinion after reviewing Plaintiff's testimony.  (Tr. 2353.)  In an updated Medical Source Statement, Dr. Gilman opined that Plaintiff could perform continuous fine finger manipulation.  (*Id*.)  Dr. Gilman's opinion was consistent with the ALJ's RFC finding.

Finally, Plaintiff argues that the ALJ erred in relying on the testimony of Dr. Benovitz regarding Plaintiff's alleged mental limitations, as Dr. Benovitz ultimately found insufficient evidence to render any opinions.  First, the ALJ found Plaintiff's mental impairments to be nonsevere, and Plaintiff does not challenge that finding on appeal.  Indeed, Plaintiff's acknowledgment "that there was insufficient evidence for [Dr. Benovitz] to give his opinion about the nature and severity of the Plaintiff's impairments during the relevant time period because there was no psychiatric treatment evidence in the record," highlights the reasonableness of the ALJ's nonseverity finding. (Doc. 16 at 20 (emphasis in original).)  Nevertheless, the ALJ's interpretation of the psychiatric evidence in this instance was reasonable, and is entitled to deference.  *See Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (stating that an ALJ's

reasonable interpretation of evidence is entitled to deference); *see also Green v. Comm'r of Soc. Sec.*, 695 F. App'x 516, 518 (11th Cir. 2017) (stating that "[a reviewing court] must defer to the ALJ's decision if it is supported by substantial evidence"). No doctor prescribed specific mental limitations upon Plaintiff.[4] Moreover, Plaintiff testified that although he was once prescribed Zoloft, he never actually took the medication and did not seek any psychiatric treatment. (Tr. 51-54.) Dr. Benovitz ultimately testified at the hearing that Plaintiff did not have a severe mental impairment upon reviewing the evidence (Tr. 58), and a state agency reviewing physician found Plaintiff's mental impairment to be nonsevere on November 26, 2010 (Tr. 2281). The ALJ's nonseverity and RFC findings as to Plaintiff's alleged mental impairments are supported by substantial evidence.

## III.  Conclusion

The Court does not make independent factual determinations, re-weigh the evidence, or substitute its decision for that of the ALJ. Thus, the question is not whether the Court would have arrived at the same decision on *de novo* review; rather, the Court's review is limited to determining whether the ALJ's

---

[4] While Dr. Rainwater issued a supplemental mental impairment questionnaire on May 5, 2010, checking without explanation that Plaintiff suffers from a mental impairment that significantly interferes with daily functioning, such a conclusory opinion lacks probative value. *Cf. Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x 901, 903 (11th Cir. 2011) ("[T]he AC was free to give little weight to the conclusory assertions contained in the questionnaires because they merely consisted of items checked on a survey, with no supporting explanations.") (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)).

findings are based on correct legal standards and supported by substantial evidence. Based on this standard of review, the undersigned affirms the ALJ's decision that Plaintiff was not disabled within the meaning of the Social Security Act for the time period in question.

Accordingly, it is **ORDERED**:

1. The Commissioner's decision is **AFFIRMED**.

2. The Clerk of Court is directed to enter judgment accordingly and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, on August 27, 2018

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record